**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **CXT SYSTEMS, INC.,** | **FILED UNDER SEAL** |
| **Plaintiff,** | |
| **v.** | **CASE NO. 2:18-CV-00171-RWS** |
| **ACADEMY, LTD., d/b/a ACADEMY SPORTS + OUTDOORS,** | **LEAD CASE** |
| **Defendant.** | **JURY TRIAL DEMANDED** |

| | |
|---|---|
| **CXT SYSTEMS, INC.,** | |
| **Plaintiff,** | **CASE NO. 2:18-CV-00233-RWS** |
| **v.** | **JURY TRIAL DEMANDED** |
| **J. C. PENNEY COMPANY, INC.,** | |
| **Defendant.** | |

**JCPENNEY'S MOTION FOR SUMMARY JUDGMENT BASED ON NON-INFRINGEMENT AND LICENSE**

# TABLE OF CONTENTS

**Page(s)**

I.     STATEMENT OF ISSUES ................................................................. 3

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................... 3

     A.     The Patents-in-Suit and CXT's Allegations. ..................................... 3

     B.     The Claim Construction Order.................................................... 5

     C.     The JCPenney Architecture Uses the React Web Framework REDACTED
        .................................................................................... 6

     D.     REDACTED                               Does Not Satisfy the Claim
        Limitations. ........................................................................ 9

     E.     CXT's Infringement Allegations Rely REDACTED ................................. 10

     F.     CXT Cannot Rely        REDACTED         as an Example of
        Alleged Infringement Because of        REDACTED        ........................ 10

     G.     REDACTED        ................................................................... 11

     H.     JCPenney's     REDACTED        ................................................... 15

     I.     Implicitly Recognizing That It CannotREDACTED CXT Attempts to
        Redefine "Website" in Order to Allege that        REDACTED
        .................................................................................... 15

III.   LEGAL STANDARD................................................................... 16

IV.    ARGUMENT.......................................................................... 17

     A.     CXT Cannot Establish Infringement of the Asserted Patents Because the
        REDACTED                           ............................................. 17

     B.     JCPenney is Licensed to              REDACTED
        .................................................................................... 21

        1.     REDACTED                 . ............................. 21

        2.     JCPenney is a      REDACTED        . ............................ 22

       3.     CXT Sued JCPenney In Violation of    REDACTED
Without Conducting Any Pre-Filing Investigation...................................23

   C.    CXT Cannot Establish Infringement of the '581 Patent or the '806 Patent
Based Upon    REDACTED   .................................................................24

   D.    CXT Cannot Establish Infringement of the '875 Patent Based Upon
REDACTED    ...................................................................27

V.   CONCLUSION...................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................... 16

*Civix DDI, LLC v. Nat'l Assoc. of Realtors*, NO. 05 C 6869, 2007 WL 178318 (N.D. Ill. 2007) 20

*Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. Ct. 1990) ..... 21

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014) ................................ 16

*Techsearch, LLC v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002) .................................................. 16

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ........................................ 16

CXT's technical expert ignored the JCPenney website's reliance on the React web architecture. React allows the JCPenney systems to avoid the latency issues associated with repeatedly sending HTML Documents over a network. This works by compiling JavaScript code bundled with a datastore to use as necessary and sending the code to the user's browser to be executed. CXT's technical expert, Mr. McAlexander testified that that a server-side application that retrieves all of the data associated with a user account and then generates a JavaScript file that is transmitted to the browser and which is executed on the browser does not meet the "filtering" limitations of the asserted claims. Because the JCPenney website works in the same manner, JCPenney does not infringe the Asserted Patent claims and is entitled to Summary Judgment.

Furthermore, CXT                         REDACTED

Despite this, CXT's infringement arguments as to Defendant J. C. Penney Corporation, Inc. ("JCPenney") rely on            REDACTED            and JCPenney's systems. In fact, there is not a single independent claim asserted in the Supplemental Report provided by CXT's infringement expert, Mr. McAlexander, that does not contain at least one reference to          REDACTED          part of the accused infringement.

JCPenney is a                    REDACTED                    , and the REDACTED

CXT is bound by the obligations it assumed when it   REDACTED

1

to the Asserted Patents. Accordingly, JCPenney is entitled to summary judgment barring CXT from asserting any claims for infringement that relate in any way to any activities performed by REDACTED as such activities are licensed and CXT has REDACTED JCPenney based on such activities.

Without being able to rely on REDACTED for its infringement allegations, CXT cannot establish that the JCPenney infringes any of the asserted patent claims. CXT's expert does not show, and simply assumed, that JCPenney's website operates using "web page files," as required by the claims of the '581 Patent and '806 Patent. However, the undisputed evidence shows that JCPenney's website architecture dynamically generates content to send to the customer's browser and does not store or retrieve "web page files."

The asserted claims of the '875 Patent, require that a customer must interact with a "subsequent web-site." Implicitly recognizing that in light of REDACTED, it can no longer rely on REDACTED to satisfy this limitation, CXT and its expert have attempted to improperly re-define the Court's construction of the term "website" as REDACTED

CXT's new proposed construction of the term "website" would render the term meaningless. As properly construed, CXT cannot show that JCPenney's website alone reads on the required "subsequent web-site" limitation in the '875 Patent claims.

JCPenney is therefore entitled to Summary Judgment of non-infringement based on REDACT and CXT's inability to prove the "filtering", "web page file", and "subsequent web-site" limitations of the asserted patent claims are met.

2

## I.    STATEMENT OF ISSUES

Pursuant to Local Rule 7(a)(1), JCPenney submits the following issues to be decided:

1.    Whether the Court should grant summary judgment of non-infringement in favor of JCPenney as to all Asserted Patents because CXT cannot establish that the accused systems perform the limitation of "retrieving one or more consumer information elements by filtering data from the information account" or receiving "information elements filtered from the information account"?

2.    Whether the Court should grant summary judgment of non-infringement in favor of JCPenney as to all Patents-in-Suit to the extent CXT relies on         REDACTED

3.    Whether the Court should grant summary judgment of non-infringement in favor of JCPenney as to the '581 Patent and '806 Patent because CXT cannot establish that the accused systems perform operations upon a "web page file" or operations "causing a browser to display a web page file that has been retrieved from a vendor server"?

4.    Whether the Court should grant summary judgment of non-infringement in favor of JCPenney as to the '875 Patent because CXT cannot establish that the accused systems automatically manage subsequent authentications of the consumer while the consumer is interacting with a "subsequent web-site"?

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The Patents-in-Suit and CXT's Allegations.

1.    A true and correct copy of the '581 Patent is attached to this motion as Exhibit A. A true and correct copy of the '806 Patent is attached to this motion as Exhibit B. A true and

correct copy of the '875 Patent is attached to this motion as Exhibit C.

2.      CXT alleges that JCPenney infringes or induces infringement of independent claims 1 and 36, and dependent claims 38, 43, and 59[1] of the '581 Patent, independent claims 1, 11, and 19, and dependent claims 2 and 13 of the '806 Patent, independent claims 1 and 17, and dependent claims 4, 6, and 22 of the '875 Patent. CXT accuses the systems used to provide access to www.jcpenney.com and                    REDACTED

3.      The asserted independent claims of every patent-in-suit—and thus all the asserted dependent claims—include the limitations of "**retrieving by filtering** data from the information account" and/or receiving "information elements **filtered** from the information account" (*See* Ex. A at 18:36-45, 22:61-23:19, & 25:28-51, Ex. B at 17:59-18:24, 19:51-20:24, & 21:9-48, Ex. C at 26:59-27:37 & 29:8-52 (emphasis added).)

4.      The independent claims of the '581 Patent all contain a nearly identical limitation that Mr. McAlexander and CXT have identified as elements 1[D], 36[G], and 58[D]. Elements

---

[1] While CXT does not assert infringement of independent claim 58 of the '581 Patent, claim 59 (which is asserted) depends on claim 58. (Ex. A at 25:27-59.)

[2] Mr. McAlexander's                    REDACTED

1[D] and 58[D] require "autopopulating the selected consumer information elements into at least one input field of a **web page file**," and 36[G] requires the system to "autopopulate the selected information elements into at least one input field of a **web page file**." (*See* Ex. A at 18:20-45, 22:61-23:19, & 25:28-51 (emphasis added).)

5.     The independent claims of the '806 Patent all contain an identical limitation that Mr. McAlexander and CXT have identified as elements 1[B], 11[B], and 19[B]:

> causing a browser to display **a web page file that has been retrieved from a vendor server**, the web page file including an instruction that causes the browser to request transmission of a client-side application having at least a temporary portion;

(Ex. B at 18:5-10, 19:63-67, 21:22-26 (emphasis added).)

6.     The independent claims of the '875 Patent both contain an identical limitation that Mr. McAlexander and CXT have identified as a portion of elements 1[C] and 17[C]:

> . . . the consumer will not be required to again input the consumer authentication information upon initiating a second request for access to the information account **while interacting with a subsequent web-site** that is configured to provide access to the information account upon authentication of the consumer;

(Ex. C at 27:15-23 & 29:30-38 (emphasis added).)

**B.     The Claim Construction Order.**

7.     On September 6, 2019, this Court issued a Claim Construction Memorandum Opinion and Order ("Claim Construction Order") in this case, in which it construed the disputed claim terms of the '875 Patent, the '581 Patent, and the '806 Patent. (Claim Construction Order, Dkt No. 207, attached hereto as Ex. E.)

8.     The Claim Construction Order takes notice of the parties' agreed construction of "web page file" as "An HTML document or other related file that is stored on a server and that an HTTP server retrieves and returns in response to a HTTP request." (*Id.* at 16.) It also takes notice

of the parties' agreed construction of "web page" as "an HTML file and associated files that an HTTP server returns in response to a request." (*Id.* at 17.)

9.    The Court construed the disputed terms "website" and "web-site." (*Id.* at 52-55.) The Court found that "'website' is used according to its customary meaning," and construed the terms "website" and "web-site" as "a group of related HTML documents and any associated files, scripts, and databases that is served up by an HTTP server on the World Wide Web." (*Id.* at 54-55.)

10.    The terms "filtering" or "filtered" were not construed as separate terms but were examined as part of the claim elements "retrieving one or more consumer information element from the information account by filtering data from the information account" and "retrieving the selected consumer information elements . . . by filtering data from the information account with the database management system." (*See id.* at 45-48.) And the Court construed those elements to have their plain and ordinary meaning. (*Id.* at 48.)

C.    **The JCPenney Architecture Uses the React Web Framework** REDACTED

11.    React is a web framework created and maintained by Facebook and used by JCPenney. (*See* Expert Report of Scott Nettles Concerning Non-Infringement by Defendant J.C. Penney Corporation Inc. of U.S. Patent Numbers 7,016,875, 7,257,581, 8,260,806, Nov. 4, 2019, attached hereto as Ex. F (with accompanying verification), at ¶94.) React is important to the JCPenney system's user interface ("UI") because it limits server interactions in order to avoid the latency issues involved with storing and sending HTML Documents over a network. (*See id.* at ¶95) Instead of operating via repeatedly sending HTML Documents over a network, React builds a bundle of content, both code and data, that will allow it to service many UI actions by just

rerendering the content as is appropriate for the action at the browser. (*See id.* at ¶¶95, 106-07, 118, 135, 139-40, 142-45, 167, 182-83, 210, & 221 (discussing React and its integration and providing examples of its use in the JCPenney microservices architecture).)

12.     In order to enable this process, React uses .jsx code that is a hybrid of XML/HTML syntax that allows embedding of HTML in javascript rather than the more conventional embedding of javascript in HTML. (*See id.* at ¶¶94, 143-44.) This code is compiled into javascript and bundled together with the React datastore and sent to the browser to be executed there. (*See id.* at ¶¶95, 118, 135, 140-43.)

13.     Dr. Nettles, JCPenney's non-infringement expert, shows how the JCPenney architecture works using the                    REDACTED                    Once logged in, a customer can          REDACTED          by using the "button" saying "My Account" (generally in the upper right of the JCP website pages). (*See id*. at ¶¶129-39 (including screenshots of the website and developer views showing what is happening in the background).) Doing so will cause a slide-out to appear with an account management menu. (*See id.* at ¶130.) The slide out is pre-cached, meaning no page loads or significant network interactions occur because of this action. (*See id.* at ¶129-30.)

14.     Choosing the slide out button "My Info" results in a request for a page at https://www.jcpenney.com/account/dashboard/personal/info much as if you had entered that URL directly. (*See id.* at ¶131.) In order to display the requested page as quickly as possible, REDACTED does not retrieve a HTML document or other related file that is stored on a server. (*See id.* at 135.) Instead, it will use React to **build** the initial page on the server side and send that rendering along with the data for the React datastore and the code to do any further rendering on the client. (*See id.* at ¶¶95, 135-140 (also showing examples of the lack of server interaction).)

7

15.     Importantly, to build the React datastore,    REDACTED    eventually makes
a request to                              REDACTED

16.     Dr. Nettles' Report shows the screens that appear on the browser when a user
requests to edit his or her address, attempts to clear his or her address, and tries to save without
entering a full address. (*See id.* at ¶¶136-39.) The developer view after these interactions shows
the browser's use of React to display the new screens. (*See id*. at ¶139.) These actions do not result
in ***any*** server interactions, and therefore do not retrieve HTML documents or other related files
stored on a server. (*Id.*)

17.     The  other  aspects  of  JCPenney's            REDACTED

                                     use React in a similar manner to dynamically create .jsx
files rather than storing HTML documents on a server awaiting a request to retrieve the stored
documents or files. (*See e.g.*, *id*. at ¶¶167 & 182-83.)

18.                              REDACTED

REDACTED

19.                                    REDACTED

**D.    Filtering Done at the User's Browser Does Not Satisfy the Claim Limitations.**

20.    As discussed above, React works through building and sending .jsx files including

the React datastore including            REDACTED            from the server to the

browser. (Ex. F, at ¶¶94-95, 118, 135, 140-44.) But Mr. McAlexander does not REDACTED

However, Mr. McAlexander testified at his deposition that this architecture does not meet the

limitations of the claims. (Ex. G, November 20, 2019 Deposition of Joseph McAlexander, at 46:5-

48:12 & 87:3-94:11 (relevant excerpts attached).)

21.    Mr. McAlexander testified that "from a plain and ordinary meaning standpoint, the

term "filtering," as used, would cover the fact that certain data that was in a raw form would be

passed through, what [he will] call a mask, in such a way that only certain portions of the data []

would be selectable for use," and a "[m]ask is basically a set of certain criteria [] for the purpose

of identifying only portions of the raw data [] for use." (*Id.* at 47:3-15). Mr. McAlexander went on

to testify that, "If the determination of the filtering is done down at the user's browser . . . that does

9

not read properly for what the claim requires." (*Id.* at 89:11-15). Mr. McAlexander was speaking directly in response to a question regarding "a server-side application that generates a JavaScript file that is transmitted to the browser and then executed on the browser." (*Id.* at 89:5-8).

22.    Mr. McAlexander went on to clarify:

The claim requires that the server-side application determines the elements that are to be inputted.  It has to make that determination, and it has to retrieve that information.   And ***it has to retrieve that information by filtering***. . . . So the server-side application has to meet all the parameters of what is required by the claim.  And ***sending raw data down that is yet to be filtered and then sending a script along for that information to be populated by the user's computer***, is not meeting this element of the claim.

(*Id.* at 89:23-90:19 (emphasis added).)   Mr. McAlexander re-emphasized this point numerous times thereafter. (*Id.* at 90:20-94:11.)

**E.    CXT's Infringement Allegations Rely** REDACTED .

23.    Mr. McAlexander's              REDACTED

**F.    CXT Cannot Rely on**        REDACTED        **as an Example of**

10

**Alleged Infringement Because of** REDACTED .

24.     CXT gained rights to the Asserted Patents through          REDACTED

25.                              REDACTED

26.     CXT admittedly made no effort to learn of any          REDACTED

Therefore, CXT has no evidence and no
knowledge regarding the          REDACTED          other than what has been provided through
responses to the third-party subpoenas issued to          REDACTED          .

**G.**     REDACTED .

27.                              REDACTED

11

REDACTED

28.                              REDACTED

# REDACTED

REDACTED

# REDACTED

29.                    REDACTED

# REDACTED

31.                           REDACTED

**H.    JCPenney's**    REDACTED

32.    JCPenney                        REDACTED

33.                          REDACTED

**I.    Implicitly Recognizing That It Cannot Rely**[REDACTED]**, CXT Attempts to Redefine "Website" in Order to Allege that Different Parts of the JCPenney Website Are "Subsequent Websites".**

34.    In the Supplemental Report by CXT's infringement expert Mr. McAlexander, Mr.

McAlexander              REDACTED

---

[4]                     REDACTED

15

REDACTED

35.    Mr. McAlexander's Supplemental Report spends significant time REDACTED

36.    Despite the Court having already construed the term "website" according to its customary meaning (*see* Ex. E at p. 54), Mr. McAlexander     REDACTED

## III.    LEGAL STANDARD

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material fact disputes are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. When the party seeking summary judgment demonstrates the absence of a

genuine dispute over any material fact, the burden shifts to the non-movant to show that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Here, CXT has the burden of proof at trial to establish infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014). The infringement analysis is a two-step process in which the Court first determines the correct claim scope, and then the properly construed claims are compared to the accused device to determine whether all of the claim limitations are present. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002). To establish infringement, CXT must prove that "***all of the elements*** of the claim, as correctly construed, [are] present in the accused system." *Techsearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) (emphasis added). Accordingly, "general assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden." *Id.* at 1372. As shown below, CXT cannot meet its burden of coming forward with evidence to establish each element of the assert claims are present in the accused systems—they are not. CXT

REDACTED

. Thus, JCPenney is entitled to summary judgment of non-infringement.

## IV.    ARGUMENT

### A.    CXT Cannot Establish Infringement of the Asserted Patents Because the JCPenney Systems Do Not Retrieve Information by Filtering.

All claims in the Asserted Patents require "filtering":

- Independent claim 1 of the '581 Patent claims "A computer-implemented method . . . comprising the steps of: . . . retrieving the selected consumer information elements from the information account by ***filtering*** data from the information account with the database management system . . . ." (Ex. A 18:20-45 (emphasis added).)

17

- Independent claim 36 of the '581 Patent requires the system to "A computer-implemented method . . . comprising the steps of: . . . retrieving the selected consumer information elements by ***filtering*** data from the information account with a database management system . . . ." (Ex. A 22:61-23:19 (emphasis added).)

- Independent claim 58 of the '581 Patent claims "A system . . . comprising: . . . communicating with the central data repository in order to retrieve the selected consumer information elements from the information account by ***filtering*** data from the information account with a database management system . . . ." (Ex. A at 26:28-51 (emphasis added).)

  Independent claim 1 of the '806 Patent claims: "…causing a computing device to perform operations comprising: . . . receiving at the network device the one or more consumer information elements ***filtered*** from the information account; and autopopulating the ***filtered*** one or more consumer information elements into corresponding fields." (Ex. B at 17:59-18:24 (emphasis added).)

- Independent claim 11 of the '806 Patent claims "A method . . . comprising: . . . receiving at the network device in response to the request data including the one or more consumer information elements retrieved from the information account by ***filtering*** data from the information account and transmitted over the distributed electronic network to the network device; ***filtering*** the one or more consumer information elements from the data including the one or more consumer information elements; and autopopulating the ***filtered*** one or more consumer information elements into corresponding input fields of the web page file displayed on the network device." (Ex. B 19:51-20:24 (emphasis added).)

- Independent claim 19 of the '806 Patent claims "A system . . . comprising: . . . receiving at the network device in response to the request data including the one or more consumer information elements retrieved from the information account by ***filtering*** data from the information account and transmitted over the distributed electronic network to the network device; ***filtering*** the one or more consumer information elements from the data including the one or more consumer information elements; and autopopulating the ***filtered*** one or more consumer information elements into corresponding input fields of the web page file displayed on the network device." (Ex. B at 21:9-48 (emphasis added).)

- Independent claim 1 of the '875 Patent claims "A computer-implemented method . . . comprising the steps of: . . . retrieving one or more consumer information element from the information account by ***filtering*** data from the information account with the database management system . . . ." (Ex. C at 26:59-27:37 (emphasis added).)

18

- Independent claim 1 of the '875 Patent claims "A computer-implemented method . . . comprising the steps of: . . . retrieving one or more consumer information elements from the information account by ***filtering*** data from the information account . . . ." (Ex. C at 29:8-52 (emphasis added).) [5]

The Court construed these "filtering" claim elements according to their plain and ordinary meaning. (Ex. E at p. 45-48.) CXT's expert testified that a plain and ordinary meaning of filtering is when "data that was in a raw form would be passed through . . . a mask, in such a way that only certain portions of the data [] would be selectable for use." (*Id.* at 47:3-15.)

The JCPenney website[6] does not perform the filtering limitation as required by the claims. JCPenney's    REDACTED    uses the React web framework to compile .jsx code in to javascript) . (Ex. F, ¶¶94-95, 118, 135, 140-44.) The javascript is bundled with a datastore that consists of        REDACTED        (the "raw" data), because access to the        REDACTED        (*See id.* at ¶99 & 145.) The data is retrieved together, not as separate or selected items. (*Id.*) Once the REDACTED compile the pages, they are sent to be executed on the customer's browser. (*See id.* at ¶¶143-47.)

---

[5] The asserted dependent claims of the '581, '806, and '875 Patents each depend on one of these listed independent claims. (*See* Ex. A at 23:23-30, 23:59-64, & 25:52-59; Ex. B at 18:25-31 & 20:30-37; Ex. C at 27:51-52, 27:59-61, & 30:30-34.)

[6]        REDACTED

Mr. McAlexander never addresses React. Though React's role is readily apparent in the REDACTED JCPenney produced and is easily found in the examples provided by Dr. Nettles.[7] (*See id.* at ¶¶106-07, 118, 135, 139-40, 142-45, 167, & 182-83.) The likely reason Mr. McAlexander ignores this React structure and REDACTED because it directly contradicts his opinion that a server-side application that generates a JavaScript file that is transmitted to the browser and then executed on the browser does not read properly for what the claims require. (*See* Ex. G at 89:5-15.) In other words, according to Mr. McAlexander's own testimony, JCPenney's REDACTED does not meet the filtering elements of the claims—by using React REDACTED the JCPenney systems are "***sending raw data down that is yet to be filtered and then sending a script along for that information to be populated by the user's computer***." (*Id.* at 89:23-94:11 (emphasis added).)

To the extent that Mr. McAlexander attempted to rely on REDACTED

[7] REDACTED

REDACTED

The JCPenney website operates in a way that CXT's expert testified does NOT meet the "filtering" elements of the Asserted Patents. CXT cannot prove that all of the elements of the claims are present in JCPenney's website. Therefore, JCPenney is entitled to summary judgment of non-infringement as to the '581 Patent, the '806 Patent, and the '875 Patent.

**B.      JCPenney is Licensed to the Asserted Patents**        REDACTED

Summary judgment of non-infringement is appropriate when the evidence shows that a defendant is a third-party beneficiary of a covenant not to sue and the accused activities fall within the scope of the covenant not to sue. *See e.g.*, *Civix DDI, LLC v. Nat'l Assoc. of Realtors*, NO. 05 C 6869, 2007 WL 178318 (N.D. Ill. 2007) (granting  partial summary judgment because certain of the plaintiff's patent infringement claims were barred because the defendant was a third-party beneficiary to a settlement agreement between plaintiff and a non-party, and the defendant's activities fell within covenants not to sue customers arising from the agreement).

**1.**          REDACTED              .

REDACTED

Under Delaware law, in order for third-party beneficiary rights to be created, it is necessary that performance of the contract confer an intended benefit upon a third person, and the beneficial effect on such third-party, whether it be creditor or donee, should be a material part of the contract's purpose. *Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. Ct. 1990). "[W]here it is the intention of the promisee to secure performance of [a] promised act for the benefit of another, either as a gift or in satisfaction of an obligation to that

person, and the promisee makes a valid contract to do so, then such third person has an enforceable right under that contract to require the promisor to perform or respond in damages." *See Id.*

REDACTED

 

 

 

 

 

 

 

 

 

    **2.**    **JCPenney is a**        REDACTED

If the contentions in Mr. McAlexander's Supplemental Report are taken as true, then JCPenney is a        REDACTED

REDACTED

 

 

3.    **CXT Sued JCPenney In Violation of** REDACTED **Without Conducting Any Pre-Filing Investigation.**

CXT's infringement allegations against JCPenney are covered by the REDACTED

23

REDACTED

REDACTED

Therefore, JCPenney is entitled to summary judgment of non-infringement as to all Patents-in-Suit

because JCPenney is licensed            REDACTED


**C.    CXT Cannot Establish Infringement of the '581 Patent or the '806 Patent Based Upon JCPenney's Website Alone.**

All asserted claims in the '581 Patent and its continuation, the '806 Patent, require

interaction with a "web page file":

- Independent claim 1 of the '581 Patent claims "A computer-implemented method . . . comprising the steps of: . . . autopopulating the selected consumer information elements into at least one input field of a ***web page file***." (Ex. A 18:20-45(emphasis added).)

- Independent claim 36 of the '581 Patent requires the system to "A computer-implemented method . . . comprising the steps of: . . . autopopulating the selected information elements into at least one input field of a ***web pare [sic] file***." (Ex. A 22:61-23:19 (emphasis added).)

- Independent claim 58 of the '581 Patent claims "A system . . . comprising: . . . autopopulating the selected consumer information elements into at least one input field of a ***web page file***." (Ex. A at 26:28-51 (emphasis added).)

- Independent claims 1, 11, and 19 of the '806 Patent all claim the following identical limitation: "causing a browser to display *a web page file that has been retrieved from a vendor server*, the *web page file* including an instruction that causes the browser to request transmission of a client-side application having at least a temporary portion." (Ex. A at 18:5-10, 19:63-67, 21:22-26 (emphasis added).)[8]

The agreed construction of "web page file" (and "web pare file") is "An HTML document or other related file that is stored on a server and that an HTTP server retrieves and returns in response to a HTTP request." (Ex. E at p. 16.)

In the attachments to his Supplemental Report, Mr. McAlexander makes only conclusory statements that                    REDACTED                              He either fails to investigate or purposefully ignores the              REDACTED

This provided additional evidence that the JCPenney      REDACTED      uses the React web framework and does not store HTML documents or other related files on a server waiting to be retrieved, as required by the Court's construction of "web page file." The use of the React framework was

---

[8] The asserted dependent claims of the '581 and '806 Patents each depend on one of these listed independent claims. (*See* Ex. A at 23:23-30, 23:59-64, & 25:52-59; Ex. B at 18:25-31 & 20:30-37.)

REDACTED

Mr. McAlexander takes a similar approach with the claims of the '806 Patent. He makes
conclusory statements that                REDACTED

If Mr. McAlexander had investigated, he would have found that his assumption was
wrong. As Dr. Nettles shows in his Declaration, the JCPenney website's REDACTED
uses the React web framework. (Ex. F at ¶94-95, 106-07, 118, 135, 139-40, 142-45,
167, & 182-83.) One of the benefits of the React system is that it avoids the slow (by computer
standards) process of storing and retrieving "an HTML document or other related file that is
stored on a server and that an HTTP server retrieves and returns in response to a HTTP request."
(*See id*. at ¶95 & 276.) As shown by Dr. Nettles, the JCPenney website's use of React can be
seen in the developers view when navigating the various pages of the site. (*See id.* at ¶¶106-07,
118, 135, 139-40, 142-45, 167, & 182-83.)

CXT has not provided, and cannot provide, any evidence to refute the JCPenney website's use of the React web framework. Mr. McAlexander's conclusory statements that the

REDACTED

are not only insufficient to create a genuine fact issue, but are based on erroneous assumptions and demonstrably false.

All of the asserted claims of the '581 Patent and its continuation, the '806 Patent, require interaction with a "web page file." But the JCPenney website does not use "web page files" as that term has been construed. Accordingly, CXT cannot prove that all of the elements of the claims, as correctly construed, are present in JCPenney's website. Therefore, JCPenney is entitled to summary judgment of non-infringement as to the '581 Patent and the '806 Patent.

**D.    CXT Cannot Establish Infringement of the '875 Patent Based Upon JCPenney's Website Alone.**

All asserted claims in the '875 Patent require interaction with a "subsequent web-site":

- Independent claim 1 of the '875 Patent claims "A computer-implemented method . . . comprising the steps of: . . . in response to authenticating the consumer, automatically managing subsequent authentications of the consumer with the database management system so that the consumer will not be required to again input the consumer authentication information upon initiating a second request for access to the information account *while interacting with a subsequent web-site* that is configured to provide access to the information account upon authentication of the consumer." (Ex. B at 27:15-23 (emphasis added).)

- Independent claim 17 of the '875 Patent claims "A computer-implemented method . . . comprising the steps of: . . . in response to the acknowledgment, automatically managing subsequent authentications of the consumer with the host server so that the consumer will not be required to again input the consumer authentication information upon initiating a second request for access to the information account *while interacting with a subsequent web-site* that is configured to provide access to the information account upon authentication of the consumer." (Ex. B at 29:30-38 (emphasis added).)[9]

---

[9] The asserted dependent claims of the '875 Patents each depend on one of these listed independent claims. (*See* Ex. C at 27:51-52, 27:59-61, & 30:30-34.)

The Court construed the disputed terms "website" and "web-site." (*See* Ex. E at 52-55.) The Court found that "'website' is used according to its customary meaning," and construed the terms "website" and "web-site" as "a group of related HTML documents and any associated files, scripts, and databases that is served up by an HTTP server on the World Wide Web." (*Id.* at 54-55.)

CXT is no longer satisfied with the Court's construction, because it now implicitly recognizes that                                        REDACTED

In a last-ditch effort to save its alleged infringement analysis, CXT seeks to dissect the JCPenney website into its component parts and call each part a new "website." Therefore, in the Supplemental Report, CXT and Mr. McAlexander have attempted to           REDACTED

---

10                                        REDACTED

28

However, CXT must also attempt to re-define the Court's construction of "website." And

Mr. McAlexander attempts to do just that so that he may now claim that:

REDACTED

---

11 [REDACTED]

REDACTED

CXT's attempt to redefine "website" must be rejected. It is contrary to the Court's claim construction and would render the term "website" completely meaningless. Navigation between the various parts of the JCPenney website does not meet the limitations of the term "subsequent web-site" in the asserted claims of the '875 Patent. Therefore, JCPenney is entitled to summary judgment of non-infringement as to the '875 Patent.

## V.    CONCLUSION

For the foregoing reasons, JCPenney respectfully requests that the Court grant summary judgment of non-infringement of the patents-in-suit.

Dated: November 27, 2019

Respectfully submitted,

J. C. Penney Corporation, Inc.

By:        /s/ Diane K. Lettelleir
           Diane K. Lettelleir
           Texas Bar No. 12241525
           J. C. Penney Corporation, Inc.
           6501 Legacy Drive (MS 1122)
           Plano, Texas 75024
           Tel: (972) 431-5012
           Fax: (972) 531-5012
           dlettell@jcp.com

           and

           HILGERS GRABEN PLLC

By:        /s/ Andrew R. Graben
           Michael T. Hilgers
           Texas State Bar No. 24050761
           Mary Ann Novak
           HILGERS GRABEN PLLC
           575 Fallbrook Blvd., Suite 202
           Lincoln, NE 68521
           Telephone: 402-218-2106
           Facsimile: 402-413-1880
           mhilgers@hilgersgraben.com
           mnovak@hilgersgraben.com

           Andrew R. Graben
           Texas State Bar No. 24045964
           J. Kristopher Long
           Texas State Bar No. 24060181
           HILGERS GRABEN PLLC
           10000 N. Central Expressway
           Suite 400
           Dallas, TX 75231
           Telephone: 214-842-6828
           Facsimile: 402-413-1880
           agraben@hilgersgraben.com
           klong@hilgersgraben.com

           *Attorneys for J. C. Penney Corporation, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via the Court's ECF system on November 27, 2019, upon counsel of record for the parties.

/s/        Andrew        R.        Graben
Andrew R. Graben

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ Andrew R. Graben
Andrew R. Graben