**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CXT SYSTEMS, INC., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:18-CV-00171-RWS-RSP |
| ACADEMY, LTD., D/B/A ACADEMY | § | LEAD CASE |
| SPORTS + OUTDOORS, | § | |
| *Defendant.* | § | |
| | § | |
| CXT SYSTEMS, INC., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:18-CV-00233-RWS-RSP |
| J. C. PENNEY CORPORATION, INC., | § | CONSOLIDATED CASE |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM ORDER</u>

Before the Court is Defendant J.C. Penney Corporation, Inc.'s ("JCP") Motion to Exclude the Expert Testimony of Plaintiff CXT Systems, Inc.'s ("CXT") Technical Expert Joseph C. McAlexander III ("Motion"). Dkt. No. 282.[1] Within this Motion, JCP asserts that McAlexander's opinions should be excluded in whole or in part because (1) McAlexander failed to sufficiently disclose opinions that the JCP Checkout infringed standing alone; (2) the methods underlying McAlexander's opinions on infringement by the ATG implementation of the JCP Webstore cannot be replicated and are therefore unreliable; and (3) McAlexander's opinions are inconsistent with the Court's claim construction. JCP also argues, in the alternative, that the trial should be continued to share the same schedule as the other defendants in related cases and that CXT be permitted to

---

[1] All citations within this Order refer to the page number provided within the original document unless otherwise noted. The Court will specifically identify where ECF page numbers are being used.

cure any disclosure issues regarding its infringement theories not based on PayPal, so that JCP may respond to CXT's allegedly new positions.[2]

After consideration, the Court **DENIES** JCP's Motion. The Court concludes (1) that JCP has not shown that McAlexander failed to sufficiently disclose opinions that the JCP Checkout infringed without need for any PayPal functionality; (2) that JCP has not sufficiently shown the need to continue the trial in this case; (3) that McAlexander is entitled to rely upon non-admissible evidence in forming his opinions and that his methodology is sufficiently reliable regarding the similarity of the ATG and microservices implementations; and (4) that JCP has not shown that McAlexander's opinions are inconsistent with the Parties' agreed claim construction.

## I.    ANALYSIS

### a.    Argument that McAlexander failed to sufficiently disclose opinions that the JCP's Systems infringed standing alone

Here, CXT claims that it is asserting infringement against JCP for (1) JCP's implementation of the PayPal checkout and (2) JCP's own JCP Webstore checkout, which does not rely upon PayPal functionality. JCP argues that, "[p]rior to Mr. McAlexander's deposition, CXT and Mr. McAlexander disclosed the infringement theories and opinions that JCPenney infringes through an 'Accused Infrastructure' which includes the PayPal website and the JCPenney website." Dkt. No. 282 at 9. JCP asserts that, at his deposition,  "Mr. McAlexander disclosed a new alleged opinion that, irrespective of any integration with the PayPal website, JCPenney's Systems alone meet every element of the asserted claims and adds further new opinions to support his theory." *Id*. at 9–10. Thus, the crux of JCP's argument is that CXT failed to sufficiently disclose

---

[2] JCP also argues that McAlexander's opinions on the valuation of the asserted Steele patents were unreliable. However, the Court will address this argument in a separate order when the Court addresses JCP's Motion to Exclude Expert Testimony of Damages Expert (Dkt. No. 283).

a theory that the JCP Webstore checkout infringes standing alone, and the Court will focus on this issue.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires a written report from any witness that is "retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." That rule also provides that the expert report must comprise "a complete statement of all opinions the witness will express and the basis and reasons for them"; "the facts or data considered by the witness in forming them"; and "any exhibits that will be used to summarize or support them. . . ."

The Court will deny JCP's Motion with respect to the argument that McAlexander failed to sufficiently disclose opinions that the JCP's Systems infringed standing alone. JCP has failed to provide persuasive examples showing that McAlexander's report failed to disclose an infringement theory against these systems.

CXT cites to statements by JCP's expert during a deposition, and these statements are persuasive in showing that CXT did sufficiently disclose a theory that the JCP Systems infringed standing alone:

> Q. Okay.  So you reviewed Mr. McAlexander's report and saw that he was accusing JCP Checkout and formulated a response to that, correct?
> A. That's correct.
> Q. Okay.
> A. Actually, let me clarify that. Because I also looked at the infringement contentions. And these things were already discussed in the infringement contentions. So I was already thinking about a response well before his report.

Dkt. No. 315-2 at 79:22–80:6. The fact that JCP's expert states that he saw that the JCP Checkout was being accused in both the contentions and in the reports provides relatively strong support against JCP's argument.

JCP asserts that "[t]he relationship between the PayPal website and the JCPenney website is used as support for the alleged infringement of multiple steps or limitations of every claim asserted by CXT" and states that "[a] word search count of Attachment A shows 134 text references to the PayPal website, web pages, and/or code base references to the integration between the PayPal website and the JCPenney website. . . ." Dkt. No. 282 at 10–11.  JCP also points to several places where PayPal functionality was discussed within the report.

Even if the report references PayPal many times, this does not show that the report only includes an infringement theory involving PayPal—the report may discuss multiple infringement theories against different accused products in parallel as long as those theories are each adequately disclosed.  After reviewing the portions of the expert report that were provided by the parties, the Court has noted that the JCP functionality was frequently discussed (*see, e.g.*, Dkt. No. 315-5), and JCP has not persuasively shown that the disclosures were insufficient.

While JCP contends that McAlexander's report is "sketchy and vague" and that the infringement theory for the PayPal and JCP systems are intrinsically tied together, the Court will not exclude any portion of the Report on this basis. McAlexander will be limited to the scope of his reports at trial. However, JCP has not sufficiently shown that McAlexander's report does not comply with Rule 26.

Furthermore, JCP asserts that McAlexander relies upon only PayPal's system to satisfy the "subsequent website" element. *Id.* at 11–12 (citing Dkt. No. 282-1 at 126–27, 227, 283–84, 296 (using ECF page numbers)). However, McAlexander also provided other support for this element that was based upon the JCP systems standing alone. The Expert Report specifically shows that McAlexander claims the "subsequent website" limitation is satisfied without any PayPal functionality. Dkt. No. 282-1 at 39 (using ECF page number) ("I have further demonstrated that

the JC Penney Accused Infrastructures meet the limitations of the term 'website' in the asserted claims 1, 4, 6, 17, and 22 of the '875 Patent. For example, the JC Penney 'checkout microsite' with a URL of www.jcpenney.com/checkout *is a subsequent website* to the JC Penney shopping cart with a URL of www.jcpenney.com/cart, at least because the checkout microsite comprises a different group of HTML documents and associated files and scripts than the JC Penney Webstore shopping cart." (emphasis added)). Because of this, the Court rejects JCP's argument on this point.

### b.  Alternative request for a continuance

As an alternative to striking McAlexander's opinions on the basis that he has not sufficiently disclosed a theory that the JCP systems infringe standing alone, JCP requests a continuance so that JCP can respond to the allegedly new opinion. Dkt. No. 282 at 15. JCP states that "the Court has already suggested a continuance in the other consolidated cases allowing CXT and Mr. McAlexander to cure the same disclosure issue regarding CXT's new theory of infringement without reference to PayPal." *Id*. JCP states that a continuance is therefore available to cure any issues and that JCP should not be prejudiced for being diligent and previously including the defenses of license and patent exhaustion. *Id*.

As stated above, JCP has not shown that the disclosures were insufficient, so no continuance is necessary to cure any disclosures. Further, the continuance was allowed in other cases to permit the other defendants to provide supplemental reports as to whether the PayPal license covered the accused products. Dkt. No. 267 at 52:16–54:13; Dkt. No. 315 at 8 n.1; *see also* Dkt. No. 267 at 47:22–48:15. JCP makes no argument that a continuance is necessary to further explore the issue of whether the PayPal license covers some or all of the accused products. For these reasons, the Court **DENIES** JCP's alternative request for a continuance.

**c. Argument that McAlexander's methodology on infringement cannot be replicated and is therefore unreliable**

According to CXT, it has sufficiently alleged a theory of infringement by two different versions of the JCP Webstore: a microservices implementation and an ATG platform. Dkt. No. 315 at 8. The issue in dispute is whether CXT's infringement theory against the ATG implementation of the JCP Webstore is sufficiently reliable.

JCP asserts that McAlexander "failed to take any real steps to compare the ATG and microservices implementations or address the clear differences between the two before assuming that they were substantially identical, and that he therefore did not separately analyze the ATG implementation for infringement." Dkt. No. 338 at 3. JCP asserts that McAlexander's opinions do not survive the first factor of the *Daubert* analysis, which is "whether the expert employs a theory or technique that has been or can be tested." Dkt. No. 282 at 4, 5 (citing *Daubert v. Merrell Dow Pharm. Inc.*, 509. U.S. 579, 593–94 (1993)). JCP contends that McAlexander's infringement opinions are unreliable due to his "imprecise recordkeeping and unreproducible testing" (*id.* at 4–5), and JCP points to certain statements made by McAlexander during his deposition for support (*id.* at 5 (citing Dkt. No. 282-2 at 126:9–127:6 & 130:23–131:2)).

In CXT's response, CXT asserts that McAlexander does not simply assume that the microservices implementation and the ATG implementation of the JCP Webstore are alike. Dkt. No. 315 at 8–9. Instead, CXT contends that "Mr. McAlexander's Report analyzed both versions, determined that their code and functionality is substantively identical for purposes of infringement, and therefore provided representative citations to source code for the microservice implementation." *Id.* at 8. CXT cites to *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 3475688, at *2 (E.D. Tex. Jan. 7, 2016) and asserts that McAlexander is not required to provide parallel citations throughout his analysis for substantially identical

accused products. Dkt. No. 315 at 8. CXT argues that McAlexander's opinions regarding the similarity between these two implementations are based on specifications provided by JCP (Dkt. No. 315-5 at 15–20 & 69–78 (citing JCP0006194–202 & JCP0005760–91)), testimony of JCP's Rule 30(b)(6) witness on technical issues (Dkt. No. 315-8 at 23:1–9, 25:21–26:14, 33:22–35:10, 36:21–37:6, 40:24–41:15, 41:25–43:18, & 91:9–93:10), archived versions of the JCP Webstore (Dkt. No. 315-7 at 42–43 n.30), communications with CXT's source code reviewer, and cited source code. Dkt. No. 315 at 8–9.

Within McAlexander's report, he states that the source code cited within the report is taken from the 2018Peak version of the JC Penney webstores, which appears to be the microservices implementation. Dkt. No. 315-7 at ¶¶ 109–10. The following portion of McAlexander's report is what CXT relies upon for the ATG implementation (which appears to be referred to as the 2012 implementation below):

#### 8.3.5.1    Consideration of Source Code Versions

109.    The source code cited in this report is taken from the 2018Peak version of the JC Penney webstores.  I have reviewed the code of JC Penney webstores versions available since 2012, 2018, and 2019, and have found substantially similar features and functionality for the purposes of this analysis in each version.

110.    To further confirm the consistency of features across versions of code, Mr. Vijh performed two analyses comparing the different electronic versions of code produced, focusing on the files considered in my report for proof of infringement.  This comparison was performed on March 6 and further on October 9-10, 2019, focusing on the files in my report and comparing its content with the multiple versions that were made available.  Based on that analysis, I did not observe any substantial difference in functionality between any of the files that were considered across the multiple versions that would affect the materials that were cited.[61]

---

[61] For example, code for the  2012May and 2012Peak versions of the JC Penney website provides the same functionality as the 2018Peak version for which JC Penney produced source code printouts at the time of this report, including the files, AdminOperation.py, db.properties, DirectCommerceProfileTools.java,, UserSecureSessionValidator.java, DirectProfileRequestServlet.java, OrderDetailServlet.java, OrderHistoryDroplet.java, OrderLookupManager.java, TokenManager.java, UserProfileManager.java, ManageProfileFormHandler.java, DirectCommerceProfileFormHandler.java, BillingAddressFormHandler.java, DirectCartModifierFormHandler.java, DirectCommitOrderFormHandler.java, DirectCreateCardFormHandler.java, GuestCheckoutFormHandler.java,, DirectShippingGroupsFormHandler.java, DirectUpdateCreditCardFormHandler.java, ProcSaveAddressInfoObject.java, ProcSendOrderToSterling.java, ValidateProfileAuthenticationServlet.java ShippingUtil.java, OTDBOrderHistoryManager.java, OTDBOrderDetailManager.java, SessionValidateServlet.java SessionIDInsertServlet.java, checkout.js, UserCredentials.java, ProfileServiceDelegate.java, DirectProfileServices.java, ProfileService.java, OrderService.java, OrderServiceDelegate.java, and the functions startServer, startCluster, startAllServers, loadDefaultShippingAndPaymentGroups, loadShoppingCart

*Id*. The Court also heard argument at the January 23, 2020, pretrial conference, and CXT represented that it would not have McAlexander perform a code comparison at trial.

After consideration, the Court **DENIES** JCP's Motion on this point. Experts are entitled to rely upon information that would not otherwise be admissible. Fed. R. Evid. 703. "If experts in the

particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id*. Here, McAlexander relies upon his discussions with the source-code reviewer, and JCP has not shown that other experts in the particular field would not reasonably rely upon such evidence. Moreover, this Court has previously determined that an expert's report was sufficiently reliable in similar situations. *See, e.g.*, *Genband US LLC v. Metaswitch Networks Corp.*, Case No. 2:14-CV-33-JRG-RSP, 2016 WL 3475688, at *2 (E.D. Tex. Jan. 7, 2016); *Freeny v. Murphy Oil Corp.*, Case No. 2:13-CV-791-RSP, 2015 WL 11089599, at *2 (E.D. Tex. June 4, 2015). JCP's arguments as they relate to McAlexander's reports being purportedly devoid of any analysis regarding the ATG implementation technology implicate the weight and sufficiency of evidence and not methodology. "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd*., 802 F.3d 1283, 1296 (Fed. Cir. 2015).

In providing his opinion on the similarity of the ATG and microservices implementations, McAlexander will be limited to the scope of what was disclosed within his report. He will not be permitted to offer conversations with the source code reviewer, Mr. Vijh, that were not set out in the report unless JCP opens the door by challenging the basis for his opinions on the similarity of the products or by asking about his conversations with Mr. Vijh. To the extent that JCP does open the door, then CXT may be permitted to rebut JCP's arguments, but only after CXT approaches the bench to seek leave to discuss these issues. With this understanding, the Court **DENIES** JCP's Motion on this point.

### d. Argument that McAlexander's opinions are inconsistent with the Court's claim construction.

For context, the Court provides the language of Claim 1 of the U.S. Patent No. 7,016,875

("'875 Patent") (emphasis added):

1. A computer-implemented method for providing access to an information account stored in a central data repository that is accessible via a distributed network and is coupled to a database management system the information account containing consumer information elements that are changed by the consumer, the method comprising the steps of:

receiving, over the distributed electronic network, a first request from a network device for access to the information account and consumer authentication information in response to the consumer inputting the consumer authentication information while interacting with a first web-site;

in response to the request, authenticating the consumer with the database management system based on the consumer authentication information, thereby providing the consumer with access to the information account stored in the central data repository, a first consumer information element of the information account comprising one or more name fields to identify the consumer, a second consumer information element of the information account comprising one or more geographic address fields associated with the consumer;

in response to authenticating the consumer, automatically managing subsequent authentications of the consumer with the database management system so that the consumer will not be required to again input the consumer authentication information upon initiating a second request for access to the information account while interacting with a subsequent web-site that is configured to provide access to the information account upon authentication of the consumer;

in response to the first, second, and subsequent requests for access to the information account stored in the central data repository, retrieving one or more consumer information element from the information account by filtering data from the information account with the database management system based on an identification of a web-site being accessed by the consumer;

sending the retrieved consumer information elements over the distributed electronic network;

parsing the retrieved consumer information elements; and

***auto-populating input fields of a displayed web page file of the web-site being accessed by the consumer with the consumer information elements***.

The Parties previously provided an agreed construction for the term "auto-populating input

fields of a displayed web page file of the web-site being accessed by the consumer with the

consumer information elements" within Claim 1 of the '875 Patent as well as several other similar terms. Dkt. No. 207 at 13–15. For the term within Claim 1, the Parties agreed to a construction providing "automatically populating the information elements in input fields that a user can **directly modify** and that are displayed in a webpage form." *Id*. at 13 (emphasis added). Each of the other related agreed constructions includes this "directly modify" language. *Id*. at 13–15.

JCP argues McAlexander's opinion that the "autopopulating input fields of a displayed web page file" limitation is satisfied by the JCP checkout is inconsistent with the Court's claim construction. Dkt. No. 282 at 8. JCP cites the screenshot below, which will be referred to as "Screenshot A":



*Id*.

According to JCP, McAlexander's position at his deposition was that "the consumer entered the data into input fields at the time of account set up so the display of the inputted data at checkout as shown in the area marked with the red dotted lines satisfied the claim element of auto populating data into an input field." Dkt. No. 282 at 9 (citing Dkt. No. 282-2 at 188:14–190:9). Thus, JCP appears to argue that McAlexander's position should be excluded because it fails to show that these fields are input fields that a user can directly modify and that, because of this, McAlexander's opinions on this issue should be excluded for failure to properly apply the Court's claim constructions. *Id*. (citing *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1321 (Fed. Cir. 2009).

In response, CXT argues that McAlexander has opined that the JCP checkout satisfies this limitation and that McAlexander provides screenshots that show "input fields that a user can directly modify." Dkt. No. 315 at 12–13 (citing Dkt. No. 315-5 at 96). CXT argues that simply because "JCP's expert disagrees with his conclusions is not grounds for excluding Mr. McAlexander's opinions." *Id*. at 13 (citing *Freeny v. Murphy Oil Corp*., No. 2:13-CV-791-RSP, 2015 WL 11089599, at *2 (E.D. Tex. June 4, 2015)). CXT also argues that "JCP's assumption that a user cannot 'directly modify' the input fields on a page if a user must click an 'edit' button is both inconsistent with the specifications of the Steele Patents, and incorrect as a technical matter." *Id*. CXT states that "[c]licking the edit button merely re-styles the web page file already rendered by a user's browser, as shown in the below screenshot" and that "the input fields are both visible to the user, and are ones that the user can directly modify." *Id*. at 14. The referenced screenshot is shown below, and will be referred to as "Screenshot B":

*Id*. at 15.

In JCP's reply, JCP argues that the field shown in Screenshot A is a text field and not an input field as required by the claims. Dkt. No. 338 at 4 (citing Dkt. No. 282-1 at 286 (using ECF page numbers); Dkt. No. 315-8 at 64:20–65:2). JCP also argues that clicking an edit button on the screen shown at Screenshot A to go to input fields on Screenshot B would contradict the claim construction, arguing that "[a] text field that can be changed at account setup or later modified by going to a different page is not an 'input field that a user can directly modify.'" *Id*. at 5.

"Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." *Exergen*, 575 F.3d at 1321. "No party may contradict the court's construction to a jury." *Id*.

The Court **DENIES** JCP's Motion on this point. JCP has failed to show that McAlexander's opinions as to the fields shown in Screenshot B conflict with the Parties' agreed

construction of "automatically populating the information elements in input fields that a user ***can directly modify*** and that are displayed in a webpage form." Screenshot B depicts fields that the user can modify, and JCP has not shown that clicking the edit button to re-style the web page file necessarily means that the user cannot directly modify the fields as required by the agreed construction. Accordingly, the Court will not exclude this portion of McAlexander's opinions.

## II.      CONCLUSION

The Court therefore **DENIES** JCP's Motion.

**SIGNED this 28th day of January, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE